UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM EDWARD FLYNN,

          Movant,

v.

                              File No. 1:09-CV-451

UNITED STATES OF AMERICA,

                              HON. ROBERT HOLMES BELL

          Respondent.

_____/

## O P I N I O N

       This matter is before the Court on Movant William Edward Flynn's amended motion pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. (Dkt. No. 29.)[1] Movant was indicted in an 83 count indictment involving eight defendants on October 27, 2004, on the following charges: (1) mail fraud, in violation of 18 U.S.C. § 1341; (2) conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371; (3) conspiracy to commit money laundering, in violation of 18 U.S.C. § 371; (4) conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; (5) promotion money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); (6) transactional money laundering in violation of 18 U.S.C. § 1957; and (7) concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). (1:04-CR-165, Dkt. No. 108.)  On June 14, 2005, Movant was convicted on all counts.

---

[1]All citations to the current case file, 1:09-CV-451, will be cited directly by docket number.  All citations to other case files will include the file number.

(1:04-CR-165, Dkt. Nos. 427, 429.)  Movant appealed, and his conviction was affirmed on

February 19, 2008.  (1:04-CR-165, Dkt. No. 704.)  Movant filed his initial § 2255 motion on

May 18, 2009, and amended his motion on June 13, 2011.  (Dkt. Nos. 1, 29.)

## II.

A prisoner who moves to vacate his sentence under § 2255 must show that the

sentence was imposed in violation of the Constitution or laws of the United States, that the

court was without jurisdiction to impose such sentence, that the sentence was in excess of the

maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C.

§ 2255.  To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an

error of constitutional magnitude which had a substantial and injurious effect or influence

on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th

Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).  Non-

constitutional errors are generally outside the scope of § 2255 relief.  *United States v.*

*Cofield*, 233 F.3d 405, 407 (6th Cir. 2000).  A petitioner can prevail on a § 2255 motion

alleging non-constitutional error only by establishing a "fundamental defect which inherently

results in a complete miscarriage of justice, or, an error so egregious that it amounts to a

violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999)

(quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations

omitted)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and

may not be raised on collateral review unless the petitioner shows either 1) "cause" and "actual prejudice"; or 2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621-22 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro*, 538 U.S. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Id.*

In reviewing a § 2255 motion where factual disputes arise, "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The Court must grant a hearing to determine the issues and make findings of fact and conclusions of law on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No evidentiary hearing is required if the allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine,* 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Cases, Rule 4(b). Where the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her

3

recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

### III.

Movant raises five categories of objections: (1) prosecutorial misconduct; (2) judicial bias; (3) unfair trial; (4) ineffective assistance of counsel; and (5) unreasonable and illegal sentence. Within each category he raises numerous specific objections. Each will be discussed in turn. First, however, there is the issue of procedural default which applies to every claim except the ineffective assistance of counsel claims.

Claims not raised on direct appeal are procedurally defaulted absent a showing of cause and prejudice or a showing of actual innocence. *Massaro*, 538 U.S. at 504. The only claims Movant explicitly raised on appeal were the alleged insufficiency of the evidence underlying his conviction and the district court's allowance of rebuttal testimony by the government. Brief for Appellant, *United States v. Flynn*, 265 F. App'x 434 (6th Cir. 2008), (No. 05-2556), 2007 WL 4024673.

Movant also purported to "join[] in all arguments in his co-defendants' briefs that may provide a basis for relief in his case." *Id.* at 16. However, the Sixth Circuit only ruled on the following claims: (1) Flynn's aforementioned two claims; (2) co-defendant George Besser's objections to the district court's appointment of counsel and subsequent denial of a motion to withdraw by that counsel; (3) co-defendant Janet Marcusse's objections to the district court's denial of her request to exclude testimony and denial of her request for subpoena expenses; and (4) Marcusse, Besser, and co-defendant Donald Buffin's objections to the

4

district court's sentencing determinations. *United States v. Flynn*, 265 F. App'x 434 (6th Cir. 2008). The Sixth Circuit declined to consider the claims raised in a pro se brief by Marcusse because she was represented by counsel, and thus the claims raised in that brief were not properly before the court.

Consequently, none of the claims Movant presents were heard before the Sixth Circuit. Other than for his claim regarding *United States v. Santos*, 553 U.S. 507 (2008) (*see supra* Section 5(a)), Movant has failed to show cause and prejudice for his failure to raise his claims on appeal and failed to show actual innocence. Thus all of his claims, except his ineffective assistance of counsel claims and his *Santos* claim, are procedurally defaulted. However, even in the absence of procedural default, all of these non-*Santos* claims, including the ineffective assistance of counsel claims, lack merit. The merits of each claim will be discussed in turn.

**1. Prosecutorial Misconduct**

**a) Use of the term: "Ponzi scheme"**

Movant's first argument is that the failure of the superseding indictment to specify "Ponzi scheme" was prosecutorial misconduct. (Dkt. No. 30, at 39.) This failure does not render the indictment defective. For an indictment to be constitutional, two requirements must be met: "first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

*United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87 (1974)).

The superseding indictment clearly identified the elements of each charged offense and the corresponding statutory authority for each.  (1:04-CR-165, Dkt. No. 108.)  Movant was indicted under 18 U.S.C. §§ 371, 1341, 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1957. (*Id.*)  The term "Ponzi scheme" does not appear in the statutory language of any of these statutes.  (*Id.*)  A "Ponzi scheme" is merely a lay-term used to describe a variety of fraud. Absence of the term from the indictment is irrelevant to its effectiveness.  Thus Movant's argument is without merit.

**b) Judicial estoppel**

Next Movant alleges that judicial estoppel barred a finding on sentencing or on appeal that a Ponzi scheme was present.  (Dkt. No. 30, at 44.)  "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).  Judicial estoppel's effect "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 (2000)).  The purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties

from deliberately changing positions according to the exigencies of the moment." *Id.* at 750 (citation omitted).

Movant appears to argue that the periodic use of the term "Ponzi scheme" during trial, its absence from jury instructions, and then its subsequent use in sentencing violated the rule of judicial estoppel. However, the term "Ponzi scheme" is merely a term-of-art used to describe various types of fraud. Under judicial estoppel, the use or absence of use of the term is irrelevant; the issue is whether the government had taken contradictory legal positions during the legal proceedings. Movant has cited nothing on the record or in any exhibit indicating that the government deviated from its legal theory. Accordingly, Movant's argument for judicial estoppel is without merit.

### c) The inclusion of "Church Chapters" in the indictment

Third, Movant contends that the inclusion of "Church Chapters" in the indictment was an abuse of charging authority in violation of the First, Fourth, Sixth, Eighth, Ninth, and Eleventh Amendments. (Dkt. No. 30, at 44.) However, Movant only presents arguments as to why the First, *Fifth*, and Eighth Amendments were violated. Because he presents no arguments regarding the Fourth, Sixth, Ninth, or Eleventh Amendments, any claims he has that these are violated constitute conclusions rather than statements of facts. Because these conclusions are not supported by the record, his motion, or the exhibits, they are without merit.

As for the First Amendment, Movant argues that the government improperly targeted

his church which is a violation of his First Amendment right to the free exercise of religion. (Dkt. No. 30, at 45.)  Movant's argument is not supported by the record or the exhibits. Movant presents inferential conclusions rather than statements of fact to support his argument, and thus his argument is without merit.

Next Movant contends that the government's misrepresentations and use of the term "church chapter" during trial violated his right to due process, a Fifth Amendment right. (Dkt. No. 30, at 50.)  He also argues that the use of this term multiple times in the indictment violated his right against double jeopardy.  Once again, these contention are conclusions unsupported by the record, the cited authority, or the exhibits.  Consequently, Movant's arguments are without merit.

Movant also contends that his due process rights were violated because the government was not forced to prove that he had knowledge of the facts needed to put him on notice of the potential criminality of his actions.  (*Id.* at 52.)  A review of the record proves that this is plainly incorrect.  The requirement that the government prove knowledge was discussed many times, most notably in the jury instructions::

> In order to convict a defendant under Counts 42 through 57, you must find that the government has proven that the law imposed a duty on a defendant, that a defendant knew of this duty, and that the defendant voluntarily and intentionally violated that duty.  Now, a defendant does not act willfully if he or she believes in good faith that they are acting within the law or that their actions comply with the law. This is even so if the defendant's beliefs are not reasonable as long as he or she held that belief in good faith.

(1:04-CR-165, Dkt. No. 521, Tr. at 3762.)  (*See also* Dkt. Nos. 520, Tr. at 3461-62, and 521,

8

Tr. at 3766-67, 3773.)

Lastly, Movant claims that a nine year sentence for failure to file tax returns is a cruel and unusual punishment. (Dkt. No. 30, at 54.) This contention is a conclusion unsupported by the record, the cited authority, or the exhibits. Thus it is without merit.

### d) Evidence tampering and false or misleading testimony

Movant also claims that there was evidence tampering and false or misleading testimony in violation of the Fifth and Sixth Amendments. (Dkt. No. 30, at 55.) Movant presents no evidence besides conclusory statements, and a review of the record and exhibits provides no support to his claims. Thus these claims are without merit.

Movant also implies that every defense attorney was ineffective because they failed to object to these allegedly tampered pieces of evidence when "any competent defense attorney" would have taken a closer look and started asking questions. (Dkt. No. 30, at 61.) Instead, Movant alleges that the defense attorneys chose to "act to sabotage the defendants." (*Id.* at 62.)

To succeed on an ineffective assistance of counsel claim, Movant must show that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced Movant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Movant presents no evidence that any defense attorney acted in an objectively unreasonable manner. Instead, his contentions that counsel should have objected to various exhibits or examined them more closely are conclusory and without any support

9

from the record.  Nor can he establish prejudice because, as just discussed, he offers no evidence besides his bald assertions that the exhibits and evidence in question were tampered with.  Thus, he fails to make out an ineffective assistance of counsel claim on both *Strickland* prongs.

### e) Joinder of Diane and Wesley Boss as co-defendants

Movant also alleges that the joinder of Diane and Wesley Boss (the "Bosses") violated the Fourth, Fifth, and Sixth Amendments, and was improper because "[t]here was no competent evidence presented in the instant case to show any of the other defendants engaged in the same 'offense' or had an agreement with the Bosses not to make investments."  (Dkt. No. 30, at 70.)

First, this argument is procedurally defaulted, not just because Movant failed to raise it on appeal, but also because Movant did not move for severance prior to trial nor at any point in the trial proceedings.  Rule 12(b)(5) requires that a defendant move for severance prior to trial or the issue is waived.  Such a motion would have been meritless in any event.  As a general rule, parties that are jointly indicted should be tried together, particularly when the indictment charges conspiracy.  *United States v. Weiner*, 988 F.2d 629 (6th Cir. 1993).  Additionally, joinder is proper where there is overlapping proof.  *See United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987).  In this case, there was overlapping proof and the indictment charged conspiracy.  (1:04-CR-165, Dkt. No. 108.)

Movant also contends that this joinder caused prejudice and presumed guilt.  (Dkt. No.

30, at 67.) That argument, too, is procedurally defaulted. Prejudicial joinder is distinct from a claim of misjoinder and should be analyzed under Rule 14. *See United States v. Williams*, 711 F.2d 748, 750 (6th Cir. 1983). Similar to claims of misjoinder, Rule 12(b)(5) requires that motions for severance based upon prejudicial joinder be raised pre-trial. Thus the claim is procedurally barred, as Movant failed to raise the issue during the trial proceedings, and has thus waived the issue. *See United States v. Beaver*, No. 97-2224, 2000 WL 491538, at *2 (6th Cir. April 20, 2000). He has not shown good cause for failure to raise the issue, and pointing to Wesley Boss's motion for severance does not preserve the motion on his part. *See United States v. Ghazaleh*, 58 F.3d 240, 243 (6th Cir. 1995).

Even if the issue were not procedurally barred, it is meritless. Strong public policy favors joinder, and therefore severance is appropriate only where the trial rights of the defendant are implicated, or where joinder would "prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Breinig*, 70 F.3d 850, 853 (6th Cir. 1995) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). The jury is presumed to be capable of sifting through evidence and considering the cases of each defendant separately. *United States v. Cobleigh*, 75 F.3d 242, 248 (6th Cir.1996) (citing *United States v. Moore*, 917 F.2d 215, 222 (6th Cir. 1990)). It is the defendant's burden to show that there was specific and compelling prejudice that might confuse the jury. *Id.* Movant's argument that testimony concerning the Bosses' spending practices created a risk of "spillover prejudice" lacks merit because allegations of spillover prejudice are inadequate to show that

jury confusion occurred. *See, e.g., United States v. Medina*, 992 F.2d 573, (6th Cir. 1993); *Swift*, 809 F.2d at 323.

**f) Defendants' pre-trial pleadings**

Movant argues that the time-frame stated in the superseding indictment improperly alleged that the conspiracy continued until the time of the superseding indictment. His basis for this argument is the allegation that the government construed "the protected right of defendants to file pleadings" as "criminal conduct." (Dkt. No. 30, at 73-74.) As a result, Movant argues that he was prejudiced and subjected to an increased sentence.

Movant's arguments require incredible inferences be made before even a tenuous amount of support can be gleaned from the record or exhibits. The conclusive allegations Movant asserts are simply not supported by the record, motion, or exhibits, and are without merit. (*See* 1:04-CR-165, Dkt. Nos. 470-78, 513-22.)

**g) Crawford, Ltd.**

Movant next alleges that Crawford Ltd. was slandered as a "fraud scheme" without any evidence that it was not a legitimate foreign contract, and that this slandering caused substantial prejudice. (Dkt. No. 30, at 83.)

This claim is comprised of conclusions rather than statements of fact. Movant's allegation that no evidence supports the position that Crawford Ltd. was an illegitimate contract is not supported by the record, and is in fact contradicted by the record. (1:04-CR-165, Dkt. Nos. 518-22.) Additionally, Movant presents no evidence to demonstrate

that the Government's references to the Crawford Ltd. contract materially prejudiced him in a way that meets a § 2255 motion's requirements for viability.

Movant additionally claims certain testimony and government exhibits "substantially prejudiced" him. (Dkt. No. 30, at 85.) Movant's claim that the testimony and exhibits were improper or illegal are conclusions and are not supported by his motion, exhibits or the record. Thus this claim also lacks merit.

**h) Prosecutorial misconduct during closing argument**

Movant also alleges that prosecutorial misconduct during closing arguments violated his due process rights and led to an unreliable result. (Dkt. No. 30, at 85.)

First, neither Movant nor his trial counsel made any objections during the government's closing argument. Therefore, the failure to raise this claim at trial constitutes another basis for procedural default (in addition to Movant's failure to raise the claim on appeal). Even in the absence of procedural default, this claim is without merit. None of Movant's arguments in support of his allegation are backed up by the record, his motion, or the exhibits.

Movant also objects to the prosecutor's comments during closing arguments that he was a "liar" or was "lying." (Dkt. No. 30, at 88.) A conviction will not be reversed based on a prosecutor's comments during closing argument unless it determines that the comments are both "improper" and "flagrant." *United States v. Rose*, 522 F.3d 710, 715-16 (6th Cir. 2008); *United States v. Carroll*, 26 F.3d 1380, 1386 (6th Cir. 1994). Four factors are

13

considered in determining flagrancy: (1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally placed before the jury; and (4) the total strength of the evidence against the accused. *Rose*, 522 F.3d at 716 (2008). If the comments were not flagrant, reversal is only warranted if a reviewing court determines that: 1) the proof of the defendant's guilt is not overwhelming; 2) the defense counsel objected; and 3) the trial court failed to cure the impropriety by failing to admonish the jury. *United States v. Trujillo*, 376 F.3d 593, 613 (6th Cir. 2004). Where there is no objection at trial, on direct review, the defendant must overcome the additional hurdle of plain error review.

As Movant admits, "[t]he prosecution may imply that a defendant is lying during its closing argument so long as the prosecutor emphasizes discrepancies between the defendant's testimony and the record." *United States v. Stover*, 474 F.3d 904, 916 (6th Cir. 2007). *See also United States v. Reliford*, 58 F.3d 247, 250 (6th Cir. 1995) (prosecutor's comment that Defendant's testimony was "unbelievable," "ridiculous," and "a fairy tale" not improper where prosecutor relied on the evidence to support comments). In this case, each time the prosecution alleged that Movant or one of his co-defendant's was a liar, they supported it with references to the evidence presented. Reviewing the record, the evidence presented at trial provided plenty of support for the prosecuting attorney to make such comments. Thus, none of the prosecuting attorney's comments were improper or flagrant,

14

and Movant's claim is without merit.

### i) Prosecutorial misconduct on appeal

Next Movant contends that the prosecutors made material misrepresentations to the Sixth Circuit on appeal, denying him the due process of law. (Dkt. No. 30, at 92.) Movant's arguments regarding prosecutor fraud, interference, and harassment are conclusions rather than statements of fact. They are not supported by the record, his motion, or exhibits, and are actually contradicted by the record. Accordingly, these arguments are without merit.

### j) Concurrent sentencing doctrine on appeal

Movant also alleges that prosecutors engaged in a scam to prevent consideration of a substantive challenge to his conviction on appeal. (Dkt. No. 30, at 93.) He alleges this scam in connection with a government petition seeking remission of the $6,300 special assessment imposed by the Court as part of his sentence. His allegation is that this remission provided an excuse for the Sixth Circuit to decline to hear his challenge under the "concurrent sentencing doctrine." Under this doctrine, an appellate court may refrain from addressing challenges to a conviction where the sentence imposed for the conviction is fully concurrent with another sentence. *See United States v. Ware*, 282 F.3d 902, 906 (6th Cir. 2002).

This claim is without merit. There is nothing on the record that indicates the court of appeals was aware of the remission or otherwise failed to address any of Flynn's arguments under the concurrent sentencing doctrine.

2. **Judicial Bias**

    **a) Trial judge bias**

Movant contends that the Court's bias combined with the Court's failure to recuse itself violated his right to due process. (Dkt. No. 30, at 93.) Under 28 U.S.C. § 455, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The purpose of this provision is to "promote public confidence in the integrity of the judicial process." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859 (1988). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). Movant alleges that the Court publicly compared "tax protestors" to mass murders, terrorists, and white supremacists. Movant alleges that these comparisons combined with certain rulings made by the Court during the trial proceedings indicate impermissible bias.

These allegations represent a false invention by Movant and are not supported by the record, his motion, or the exhibits. The Court is quoted as saying "[i]t all started with these tax protestors." (Dkt. No. 30, at 93.) This quote appeared in the Grand Rapids Press, March 5, 2005, and regarded the murder of a Chicago area Judge's husband and mother.

Movant has failed to produce any authority to demonstrate that the Court's isolated comment was evidence of Court bias which prejudiced Movant. Additionally, Movant's allegation that Court rulings made during the trial proceedings were a result of Court bias

against tax protestors is not supported by Movant's motion, any attached exhibits, or the record.  Neither the public statement made by the Court nor the judicial rulings during the trial could create grounds to reasonably question the impartiality of the Court.  Accordingly, Movant's argument of judicial bias is without merit.

### b) Trial procedures resembled those used for enemy combatants

Next Movant compares the trial proceedings to certain military tribunal proceedings, which were held to be unconstitutional by *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) .  (Dkt. No. 30, at 100.)  This argument is frivolous.  There is nothing on the record that could support the argument that Movant's trial had any resemblance to the procedures outlined in *Hamdi*.  Movant's argument is without merit.

### c) Separation of powers violations

Movant also alleges that separation of powers violations, particularly the Judge's refusal to put his oath of office on the record, require his release.  (Dkt. No. 30, at 106.)  This is another frivolous argument.  It is unfounded and not supported by the record, motion, or exhibits and is without merit.

### d) Arbitrary judicial construction of language

Movant alleges that the Court improperly disregarded the definition of "investment contract" provided in *SEC v. Howey*, 328 U.S. 293, 298-99 (1946), in order to indulge the fraudulent charges of a "Ponzi scheme."  (Dkt. No. 30, at 107.)  To prevail on a § 2255 motion, Movant must demonstrate an error of constitutional magnitude or a fundamental

defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process. *Humphress*, 398 F.3d at 858 (citation omitted); *Watson*, 165 F.3d at 488 (citation omitted). Movant has failed to demonstrate how the Court's use of the term "investment contract" prejudiced Movant in a way that implicates his constitutional rights. Movant's argument consists of conclusions that require incredible inferences before support can be attributed to the exhibits and trial records Movant cites. Accordingly, Movant's argument is without merit.

### e) Court of appeals bias and fraud

Movant argues that the Sixth Circuit's refusal to consider the claims in Marcusse's pro se brief was evidence of bias and fraud. (Dkt. No. 30, at 113.) First, Movant has no standing to raise this argument because he did not properly join Marcusse's pro se brief, despite his assertion in his appellate brief that he "joins in all arguments in his co-defendants' briefs that may provide a basis for relief in his case." Brief for Appellant, *United States v. Flynn*, 265 F. App'x 434 (6th Cir. 2008), (No. 05-2556), 2007 WL 4024673. Second, to the extent Movant is permitted to "piggyback" onto Marcusse's claims, the court of appeals' failure to consider the pro se arguments of a represented party is not evidence of bias or fraud.

Although the Sixth Circuit occasionally permits the filing of pro se briefs in addition to briefs by that party's counsel, there is no constitutional right to such "hybrid representation" on appeal, and the general rule is that the appellate court does not consider

such pro se briefs.  *See, e.g., United States v. Williams*, 641 F.3d 758, 770 (6th Cir. 2011)

("because Williams was represented by counsel on this appeal, we decline to address these

pro se arguments) (citing *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009)).

Thus, whether or not the court of appeals considered Marcusse's pro se arguments in her

direct appeal, neither her nor Movant's constitutional rights were violated.

### 3. <u>Unfair Trial</u>

#### a) Charges fraudulently patterned after Chicago case

Movant alleges that the charges in his case were invented and fabricated, with the

government "lifting its script" from *United States v. Polichemi*, 201 F.3d 858 (7th Cir. 2000).

(Dkt. No. 30, at 116.)  Movant argues that because elements of *Polichemi* were also present

in his case, it should be inferred that the government patterned its case after that one.

Movant further argues that it should be inferred that the government lied, tampered with

evidence, and colluded with the Court so that Movant's case would parallel *Polichemi* and

a guilty verdict would be ensured.  Because these allegations are contradicted by the record,

are inherently incredible, and are conclusions rather than statements of fact, Movant's

argument is without merit.  *See Valentine*, 488 F.3d at 333.

Movant also alleges that Marcusse was not allowed to see the government's records

and "virtually all" of Marcusse's evidence was suppressed, causing guilty verdicts for all of

the defendants.  (Dkt. No. 30, at 118.)  This argument is wholly without merit.  The trial

record clearly indicates that Marcusse had access to all of the government's records which

19

were used to generate exhibits.  (1:04-CR-165, Dkt. Nos. 478, Tr. at 1989-90, 518, Tr. at 3048.)

As for the alleged suppression of evidence, Movant appears to be arguing that the Court improperly denied subpoenas for bank records that Marcusse sought.  On the eve of trial, Marcusse filed a pro se letter directed to the Clerk of the Court with a bare-bones request for subpoenas seeking bank records from three accounts, two purportedly at the Royal Bank of Scotland (Starbright Mgmt Ltd. and City Centre Management Ltd.), and one at Union Planters Bank (MLC Developments Int'l Inc.).  (1:04-CR-165, Dkt. No. 333.)  The Court denied the motion because it would require the Court "to subpoena the individual responsible for keeping such records at the respective banks," and Marcusse had wholly failed to show that the subpoena expense was necessary for her to present an adequate defense, as required by Federal Rule of Criminal Procedure 17(b).  (1:04-CR-165, Dkt. No. 342.)  This ruling was manifestly correct, as Marcusse failed to make any showing of necessity.

Movant appears to be arguing that the records would have somehow validated the claim that Marcusse invested money for the benefit of the investors.  But the Government did not generally contest that fact.  (1:04-CR-165, Dkt. No. 520, Tr. at 3373-75.)  That fact – and the "bank records" that may or may not have supported it – was irrelevant, as the Court tried to explain (1:04-CR-165, Dkt. No. 470, Tr. at 8-9) and as the court of appeals agreed in affirming the Court's decision to deny Marcusse's request for other subpoenas to witnesses

who would have testified about the collateral "Branson project."  *See* 265 F. App'x at 446 (finding that the individuals "were involved in matters collateral to the Access scheme and their testimony was not necessary to Marcusse's defense").

Thus Movant is not entitled to collateral relief on this or any other claim premised on an alleged denial of "bank records." Marcusse had access to every bank record the Government had, and she did not set forth an adequate basis for procuring additional records at public expense.

### b) "Good faith" defense denied

Movant alleges he was denied a good-faith defense based on the Court's failure to pursue certain witnesses.  (Dkt. No. 30, at 124.)  All of Movant's arguments center on witnesses Marcusse sought to present, and how they affected Marcusse's case.  In any case, these arguments are without merit and would not entitle either Marcusse or Flynn to relief.

First, Movant argues that Richard Gerry and James Kramer-Wilt were not pursued as witnesses.  The record shows that after discussion between the Court, defense, and government, it was determined that Gerry's presence would have had a negative effect on Movant's case and thus Gerry was released from his subpoena. (1:04-CR- 165, Dkt. No. 514, at 2219-23.)

As for Kramer-Wilt, Movant's argument that Marcusse, in good-faith, relied on representations made by him are irrelevant to Movant's case.  The indictment brought against Movant and Marcusse charged them with making fraudulent representations to investors.

21

(1:04-CR-165, Dkt. Nos. 108, 470, Tr. at 8-20).  Whether or not Movant or Marcusse was deceived by third parties was a collateral matter, and irrelevant to the charges brought against them.  *Id.*  Additionally, Movant's assertions of what Kramer-Wilt's presence would have accomplished for him and Marcusse are purely speculative and conclusive.  Accordingly, Movant's argument is without merit.

Movant further argues that Marcusse's and his own "good-faith reliance" on representations made by Gerard Forrester was a viable defense and that denial of letters allegedly written by Forrester from evidence improperly prejudiced their case.  Mr. Forrester is alleged to be a FBI Agent.  Forrester's purported letters, which Movant claims Marcusse relied on, state that a certain bank located in the Bahamas was a legitimate banking institution.  *Id.*  Although it is unclear from the record or Movant's exhibits whether Forrester even exists, or if the alleged letters can be authenticated, this argument does not rise to the magnitude necessary to be cognizable under a § 2255 motion.  (1:04-CR-165, Dkt. No. 397.)

Even if Movant's claim is presumed true, it fails to establish an error of constitutional magnitude or an error which resulted in a complete miscarriage of justice so egregious that it amounts to a violation of due process.  *Humphress*, 398 F.3d at 858 (citation omitted); *Watson*, 165 F.3d at 488 (citation omitted).  If the Court accepts that Forrester exists and accepts that the letter is authentic, it only states that a certain bank located in the Bahamas appears to be a legitimate banking institution.  (1:04-CR-165, Dkt. No. 392, Ex. 4.)  This would have no effect on Movant's case. The letter does not indicate that the bank's

22

investments matched the investments Movant described to investors. Further, Movant's argument for a "good-faith reliance" regards only the collateral matter of whether Movant was defrauded by a third-party. Accordingly, Movant's argument is without merit.

### c) Twenty witnesses were denied

Movant also argues that Marcusse was denied twenty witnesses. (Dkt. No. 30, at 133.) Once again, his argument rests solely on the Court's alleged actions against his co-defendant and not against him. Neither Movant nor his counsel sought to have any of these witnesses testify, and neither of them objected to the Court's denial of Marcusse's request to subpoena them. Thus this claim is procedurally defaulted. Even if Movant could piggyback on Marcusse's right to bring such a claim, the claim is without merit.

The claim that the subpoenas should have been granted is largely barred by the rule against relitigation. "A § 2255 motion may not be used to relitigate an issue that was raised on [direct] appeal absent highly exceptional circumstances." *Dupont v. United States*, 76 F.3d 108, 110–11 (6th Cir. 1996) (citing *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995). After trial began, Marcusse initially filed an ex parte request for 30 subpoenas for witnesses at government expense pursuant to Federal Rule of Criminal Procedure 17(b), including Attorney General John Ashcroft, Federal Reserve Chairman Alan Greenspan, and other federal officials. (1:04-CR-165, Dkt. Nos. 379, 384.) The Court denied this request. Subsequently, Marcusse submitted another request listing 26 potential witnesses, and included a summary of each witness's anticipated testimony. (1:04-CR-165, Dkt. No. 392.)

23

The Court granted the request with respect to 14 of the proposed witnesses, and denied the request with respect to the remaining 12, specifically giving reasons for the denials (mostly on the ground that the proposed testimony of the witness was irrelevant and/or cumulative). (1:04-CR-165, Dkt. No. 401.)

At trial, Marcusse renewed her request only as to three witnesses: Reede Hubert, Ed Terlesky, and Richard Williams. (1:04-CR-165, Dkt. No. 514, Tr. at 2222.) Marcusse's appellate counsel challenged the Court's denial of subpoenas to those three witnesses in her direct appeal, and the court of appeals rejected that claim: "the court correctly concluded that, inasmuch as these individuals were involved in matters collateral to the Access scheme at issue in this case, their testimony was not necessary to Marcusse's defense." *United States v. Flynn*, 265 F. App'x 434, 446 (6th Cir. 2008). Williams did, in fact, testify, and the court of appeals held that his testimony, which related to the so-called "Branson project," confirmed the collateral nature of the witnesses' proposed testimony. *See id.* Thus, this argument is barred by the relitigation doctrine—at a minimum, as to the three witnesses directly addressed in the court of appeals' opinion.

Movant's claim as it relates to the remaining witnesses—if deemed preserved and not encompassed by the court of appeals' ruling—is meritless. Rule 17(b) allows a court to issue subpoenas for indigent defendants if the defendant shows "the necessity of the witnesses' presence for an adequate defense." The court is to consider the timeliness of the request, materiality, relevance, and cumulativeness of the testimony. *United States v. Moore*, 917

F.2d 215, 230-31 (6th Cir. 1990). *See also United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 & n.7 (1982) (Rule 17(b) limitations track scope of Sixth Amendment right to secure witnesses in favor of defendant, which applies only where testimony would have been relvant, material, and vital to the defense). The trial court is granted wide discretion to ensure that the requests are specific, clearly articulating the necessity, and to ensure the process is not being subject to abuse from a defendant's inappropriate requests for witnesses. *United States v. Rigdon*, 459 F.2d 379, 380 (6th Cir. 1972). General assertions of topics the witness may cover do not meet this test. *Id.*; *United States v. Conder*, 423 F.2d 904, 909 (6th Cir. 1970); *United States v. Barker*, 553 F.2d 1013, 1020-21 (6th Cir. 1977). Even on direct appeal, an appellate court will not reverse a district court's denial of a subpoena unless "exceptional circumstances" indicate that the defendant's "right to a complete, fair and adequate trial is jeopardized." *United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990). *See also United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006) ("'[T]he Constitution permits judges to exclude evidence that is repetitive . . .only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.'")

Applying this standard – and the court of appeals' ruling that denial of subpoenas for witnesses whose testimony would relate to collateral matters such as how or why certain "investments" Marcusse purportedly made (e.g., the MLC Branson project, or the Bahamas CD) failed – it is manifest that no constitutional error occurred.

25

**d) A meaningful defense on tax allegations was denied**

Next Movant argues that he was denied a meaningful defense when Marcussee was allegedly denied the opportunity to introduce case law and statutes into evidence (Dkt. No. 30, at 140.)  Once again, this claim focuses on Marcusse.

On the merits, the Court's order did not actually preclude Marcusse from offering statutes or case law or excerpts thereof in support of a claim that she in good-faith believed she was complying with the requirements of the law.  Rather, the Court simply ordered, consistent with Sixth Circuit precedent, that defendant could not ask the jury to decide whether she was correct in her belief that her conduct complied with the law.  (1:04-CR-165, Dkt. No. 338, at 3-4).  *See United States v. Wunder*, 919 F.2d 34, 35 (6th Cir. 1990).  That would be a question of law that is not for a jury to decide.  *Id.*  The Court was aware that it had the discretion to permit the defendants to introduce some documentary evidence (such as excerpts of materials) that defendants may claim supported their good faith; accordingly, the Court deferred ruling on any particular exhibit the defense might offer at trial until the Court had an opportunity to review it to assess it for relevancy and likelihood of confusion. (1:04-CR-165, Dkt. No. 338, at 8).  However, Movant cites no statute or judicial decision or excerpt thereof that the Court refused to allow Marcusse to show the jury.  Thus Movant's claim is without merit.

**e) Jury instructions removed burden from prosecution**

There are four arguments within Movant's claim: (1) Movant was improperly

26

prejudiced by the use of the term "Ponzi scheme" during trial and its absence in the jury instructions; (2) Movant was improperly prejudiced by the Court's highlighting of evidence and the Court's citation of government exhibits for each corresponding count on the verdict form; (3) the jury instructions for the terms "gross income" and "exempt church organization" were improper; and (4) Movant's right to due process was violated when the indictment charged him with conspiracy against the IRS for failure to file.  (Dkt. No. 30, at 144.)

First, Movant argues that the use of the term "Ponzi scheme" during the trial combined with its non-use in the jury instructions improperly prejudiced him.  As previously discussed in Section 1(a), this argument is without merit.

Second, Movant argues that it was improper for the Court to highlight evidence and to cite the government exhibits that corresponded to each count on the verdict form.  Movant essentially contends that the Court was biased against him and his co-defendants and usurped the role of the jury when it "tied" the government's proffered evidence to counts in the indictment during instructions to the jury.  (Dkt. No. 30, at 147.)

However, the Sixth Circuit recognizes that:

[T]he judge in a criminal trial "is more than a mere arbiter to rule upon objections and to instruct the jury." Rather, the trial court has the responsibility of assuring "that the issues are not obscured and that the testimony is not misunderstood." The court may therefore "interject itself into the proceedings when necessary to clear up confusion in the evidence or to supplement, in an impartial fashion, the presentation . . . ."

*United States v. Hynes*, 467 F.3d 951, 958 (6th Cir. 2006) (internal citations omitted).  The

27

three factors to consider in evaluating whether a court has so overstepped its role as to bias the case before the jury are: (1) "the nature of the issues at trial," such as whether the trial was "lengthy" or "complex;" (2) the "conduct of counsel," such as where counsel was "unprepared or obstreperous" or "the facts are becoming muddled;" and (3) whether conduct of the witnesses was confusing the record in a manner the court could correct. *Id.*

Here, Movant fails to show any error under these factors. The Court, in a neutral fashion, simply facilitated the orderly presentation of proofs in a long and relatively complex case in which pro se representation had a tendency to result in a muddling of the issues. Even if the Court overstepped its bounds, Movant cannot show he was prejudiced, as the evidence of his guilt was substantial.

Third, Movant argues that the jury instructions for "gross income" and "exempt church organization" were improper. (Dkt. No. 30, at 148.) Movant notes that counsel sought clarification of the definition of "gross income" through an instruction that "gross income does not include loans, gifts, or monies received to be transferred at another's direction," but that the Court declined to follow this proposed instruction. (*Id.*) As for "exempt church organization," Movant argues that counsel failed to object to the Court's statement that, for a church to qualify for tax exemption, "no part of its earnings [may] inur[e] to the benefit of any one individual." (*Id.*)

On federal habeas corpus review, a constitutional error that implicates trial procedures shall be considered harmless unless it had a "substantial and injurious effect or influence in

28

determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  If the Court is sure that the error had no or very slight effect or influence on the jury's decision, the verdict and judgment must stand.  *O'Neal v. McAninch*, 513 U.S. 432, 436-38 (1995).  To warrant habeas relief because of incorrect jury instructions, a petitioner must show that the instructions, as a whole, were so infirm that they rendered the entire trial fundamentally unfair.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

Here, Movant cannot show that the jury instructions for "gross income" and "exempt church organization" resulted in constitutional error, let alone prejudiced him or resulted in an unfair trial.  Because Movant cannot establish prejudice, he also cannot establish an ineffective assistance of counsel claim for his attorney's failure to object to the Court's statement concerning when churches qualify for tax exemptions.  Thus his claims regarding "gross income" and "exempt church organization" are without merit.

Fourth, Movant argues that the indictment and charge of conspiracy against the IRS for "failure to file" violated his due process rights.  In essence, Movant claims that the government violated his due process rights when it contended that the Klein conspiracy charge set forth in Count 42 included a "failure to file a tax return" allegation and that these rights were violated again when the Court proceeded to include in the jury instructions that the filing of a tax return is not voluntary.

It appears that Movant is claiming that a constructive amendment of the indictment or a fatal variance occurred.  However, no constructive amendment of the indictment

occurred through the reading of the jury instructions because the Court correctly recited the elements of a Klein conspiracy to defraud the United States, as was charged in Count 42 pursuant to 18 U.S.C. § 371. (Dkt. No. 522, at 3770-71); *see also, e.g.*, *United States v. Brandon*, 17 F.3d 409, 428 (1st Cir. 1994) (setting forth elements of a § 371 conspiracy to frustrate the functions of the IRS, also known as a Klein conspiracy).

Nor was there a fatal variance.  A variance occurs when the charging terms of the indictment are left unaltered but the evidence offered at trial proves materially different from those alleged in the indictment. *United States v. Mahar*, 801 F.2d 1477, 1503 (6th Cir.1986). Variances, even on direct review, will not result in reversal unless the "substantial rights" of the defendant have been affected. *United States v. Hathaway*, 798 F.2d 902, 911 (6th Cir. 1986).  Substantial rights are affected only when a defendant proves prejudice to his ability to defend himself, to the overall fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions. *Id.*  Finally, the burden of proof rests upon the defendant to prove that the variance is fatal. *United States v. Miller*, 471 U.S. 130, 138 n.5 (1985).

Here the government's proof at trial was consistent with the allegations in the indictment: that Movant and his co-defendants conspired to "defeat the lawful functions of the Internal Revenue Service . . . in the collection of revenue" by engaging in such acts or omissions as "fail[ing] to report to the [IRS] the salaries and commissions they paid themselves," "fail[ing] to report . . . the monies . . . received . . . with which they paid personal expenses" and conducting transactions in a manner "so as to hide" funds "for the

purpose of evading the payment of appropriate income taxes." (1:04-CR-164, Dkt. No. 108.)

As for Movant or his co-conspirators failing to file tax returns, even if such acts or omissions were not fairly subsumed within these express terms of Count 42, "[i]t is axiomatic that all the overt acts in furtherance of a conspiracy need not be alleged in the indictment." *United States v. Henson*, 848 F.2d 1374, 1385 (6th Cir. 1988). Indeed, the failure to file tax returns in Movant's case more than qualifies as a sufficient "overt act" in furtherance of a Klein conspiracy to frustrate or defeat the function of the IRS. *See United States v. Shermetaro*, 625 F.2d 104 (6th Cir. 1980); *United States v. Williams*, 649 F. Supp. 1290, 1293-96 (M.D. Fla. 1986). Consequently, Movant's claim is without merit.

## 4. <u>Ineffective Assistance of Counsel</u>

Movant alleges that his court-appointed counsel, Anthony J. Valentine, provided ineffective assistance of counsel at trial and on appeal. (Dkt. No. 30, at 153.) As mentioned earlier, unlike Movant's other claims, this claim is not procedurally defaulted.

Claims of ineffective assistance of counsel are analyzed under the two-prong standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that there is a reasonable probability that, but for counsel's deficiency, the outcome of the proceedings would have been different. This requires a showing that counsel's errors were

31

so serious as to deprive the defendant of a fair trial. Unless a defendant makes both showings, it cannot be said that the "conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 694.

When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. In doing so, the proper measure of attorney performance simply remains reasonableness under prevailing professional norms. *Id.* Thus, in any case presenting an ineffectiveness claim, the performance inquiry must rest on whether counsel's assistance was reasonable considering all of the circumstances. *Id.* Such a review of counsel's performance must be highly deferential and requires the Court to "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir.2002) (quoting *Strickland*, 466 U.S. at 689).

Movant fails to establish either *Strickland* prong. The record, Movant's motion, and the exhibits all fail to show that Valentine's performance was objectively unreasonable. In fact, given the substantial nature of the evidence against the scheme led by Marcusse, Valentine's decision – a decision agreed to by Movant – to attempt to distance Movant from the scheme was more than reasonable. (Dkt. No. 45, Attach. C, at ¶ 21.) Moreover, Movant fails to establish that any of Valentine's alleged failures prejudiced him. Thus this claim is without merit.

32

Movant likewise fails to establish that Valentine provided ineffective assistance of appellate counsel.  In deciding whether appellate counsel was ineffective for failing to raise an allegedly meritorious issue on appeal, the court must assess the strength of the claim appellate counsel failed to raise.  *McFarland v. Yukins*, 356 F.3d 688, 700 (6th Cir. 2004).  As the Sixth Circuit highlighted in *McFarland*, "[c]ounsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal."  *Id.* at 699.  Moreover, a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745 (1983).  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).

Because Movant cannot establish that any of the grounds that Valentine failed to raise would have been successful – let alone non-frivolous – he cannot establish that counsel was objectively unreasonable or that he was prejudiced.

**5. Sentencing Claims**

**a) Change in law – *Santos***

Movant asserts that the Supreme Court's holding in *United States v. Santos*, 553 U.S.

507 (2008) – that "proceeds" under 18 U.S.C. § 1956(a)(1) means "profits" – precludes his conviction on the money laundering counts.  (Dkt. No. 30, at 171.)  Movant is correct as to the counts of conviction involving promotion money laundering in violation 18 U.S.C. § 1956(a)(1)(A)(i) (Counts 43-57).  The government has conceded that Marcusse is entitled to collateral relief for those counts (Dkt. No. 1:09-CV-913, Dkt. No. 59, at 28) and appears to also concede that Movant is entitled to collateral relief on those counts (Dkt. No. 45, at 34).[2]

In *Santos*, the plurality concluded that because "proceeds" could fairly be interpreted to mean either "profits" or "receipts," the rule of lenity meant that proceeds must be limited to profits, at least insofar as it was applied to an illegal lottery where the government charged promotional money laundering.  *Id.* at 514-15.  This was to avoid what the Court called a "merger" problem.  *Id.* at 516.  The Court explained that interpreting proceeds to mean receipts would mean that every person who operated an illegal lottery would, by default, simultaneously commit promotional money laundering "because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery."  *Id.*

The Sixth Circuit has interpreted *Santos* as follows: "[proceeds] means profits *only when the § 1956 predicate offense creates a merger problem* that leads to a radical increase

_____

[2]Note that *Santos* was decided after Movant's appeal.  Thus, given the government's concession, this claim would not be procedurally barred because Movant can establish cause and prejudice.

34

in the statutory maximum sentence and only when nothing in the legislative history suggests that Congress intended such an increase." *Kratt*, 579 F.3d at 562 (emphasis added).  The Sixth Circuit put it a different way in a later opinion: "[A] merger problem arises when defining 'proceeds' as 'receipts' automatically makes commission of the predicate offense a commission of money laundering and where the predicate offense carries a much lower statutory maximum sentence than the associated money laundering." *United States v. Crosgrove*, 637 F.3d 646, 655 (6th Cir. 2011).

Because there is a merger problem with counts 43-57, as the government concedes, Movant is entitled to collateral relief on those grounds.  However, Movant is not entitled to collateral relief for the other money laundering counts (41, 77-82) because those counts do not raise a merger problem.  *See Kratt*, 579 F.3d at 562 (requiring a merger problem for *Santos* to apply).  Counts 77-80 regarded transactional money laundering under 18 U.S.C. § 1957.  Under this statute, it is a crime to knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000 that is derived from a specified unlawful activity. 18 U.S.C. § 1957(a).  Here, the specified unlawful activity was mail fraud. (1:04-CR-165, Dkt. No. 108, at 31.)  Flynn was convicted of taking the investors' money received from the Access fraud scheme and using it to buy a bar (Count 77), and to pay for construction of another bar (Counts 78, 79, 80).

There is no merger problem here because the mail fraud, which involved conduct such as mailing newsletters to investors with false statements and mailing fake interest checks, did

not "merge" with Flynn's use of funds derived from the scheme for personal expenditures. *See, e.g., Bush*, 626 F.3d at 538 ("Bush's profligacy is not a basis for weaving money laundering into a Ponzi scheme"); *United States v. Moreland*, 622 F.3d 1147, 1165 (9th Cir. 2010) (counts predicated on conduct that is not "central to the scheme to defraud" do not present *Santos* merger problem). *See also United States v. McCray*, No. 09-CV-0614, 2010 WL 3171210, at *6 (S.D. Cal. Aug. 11, 2010) (rejecting defendant's *Santos* claim, presented in a § 2255 motion, in part on basis that his use of criminally derived funds "to purchase . . . luxury items for himself was clearly not a critical part of the scheme's ongoing existence and thus does not pose a merger problem"). Moreover, such transactions, by their nature, logically involved Movant's share of profits from the scheme. *See United States v. Persaud*, 411 F. App'x 431, 434 (2d Cir. 2011) (finding that "the money laundering transactions in question involved 'profits' from the underlying fraud" where "the jury heard evidence of how the [defendants] used layered financial transactions to purchase personal items such as a car or a home").

The same "non-merger" argument applies equally to Movant's convictions for conspiracy to commit money laundering (Count 41) and concealment money laundering (Counts 81 and 82).

However, just because Movant is entitled to collateral relief on Counts 43-57, the Court is not obligated to grant him § 2255 relief. The "concurrent sentencing doctrine" invests the Court with discretion to decline to hear a substantive challenge to a conviction

36

when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction. *See United States v. Ware*, 282 F.3d 902, 906 (6th Cir. 2002); *United States v. Wade*, 266 F.3d 574, 578 (6th Cir. 2001); *United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir.1989). Applying the principle, the Supreme Court and the Sixth Circuit have declined to review convictions on one count where the presence of a valid concurrent sentence on a different count is sufficient to retain the defendant in custody. *See, e.g., Hirabayashi v. United States*, 320 U.S. 81,105 (1943); *United States v. Burkhart*, 529 F.2d 168, 169 (6th Cir. 1976). The standard guiding the court's discretion is whether there exists any possibility of an adverse "collateral consequence" if the conviction is allowed to stand. *See Hughes*, 964 F.2d at 541; *Dale*, 878 F.2d at 935 n.3; *see also United States v. Byrd*, No. 89-CV-6448, 1990 WL 116538, at * 3 (6th Cir. Aug.13, 1990); *Garris v. Curtin*, No. 1:05-CV-209, 2008 WL 680416, at *11 (W.D. Mich. Mar. 7, 2008).

The Court imposed a sentence of 108 months on Count 41, to run concurrent with a sentence of 108 months on Counts 43 through 57, and with a 108-month sentence on Counts 77 through 82, along with a concurrent sentence of 60 months on Counts 1 through 40 and 42. Thus, all the money laundering counts carried a 108-month concurrent sentence. The Court also imposed concurrent three-year terms of supervised release as to each count. (1:04-CR-165, Dkt. No. 570, at 2-3.) Thus, the sentences are completely concurrent.

However, the Court did assess a $100 special assessment for each of Flynn's 63

counts of conviction, for a total of $6,300.  (1:04-CV-165, Dkt. Nos. 623, at 50, 570 at 5.)

In *Ray v. United States*, 481 U.S. 736, 737 (1987) (per curiam), the Supreme Court held that

the concurrent sentencing doctrine does not apply where a defendant must pay an assessment

on each count of conviction.  Thus, the Sixth Circuit has declined to apply the doctrine in

such cases.  *See Ware*, 282 F.3d at 906; *Wade*, 266 F.3d at 579.  Nevertheless, as Flynn

himself points out (Dkt. No. 30, at 93), on October 16, 2006, the Court remitted the entire

special assessment.  (1:04-CR-165, Dkt. No. 676.)

Movant alleges that the remission was due to prosecutorial fraud intended to allow

the Sixth Circuit to apply the concurrent sentencing doctrine.  *See infra* Section 1(j).  While

this argument is without merit – the Sixth Circuit never applied this doctrine – it is

conceivable that this argument could also apply to the present consideration of his § 2255

motion.  Nevertheless, Movant's argument consists solely of conclusory statements and he

presents no evidence that the remission was due to fraud.  Indeed, the motion for remission

was filed in 2006, well before the *Santos* decision was issued.  (*See* Dkt. No. 672.)  The

motion for remission cites "the victims' substantial losses in this case, and the government's

interest in the defendant's satisfaction of his restitution obligation" as the reasons for the

remission.  (Dkt. No. 672, at 2.)  These are valid reasons and do not hint at fraud.

Accordingly, because Movant's sentences for his money laundering convictions are

fully concurrent, the Court declines to award relief as to the counts of conviction for

promotion money laundering (Counts 43-57) pursuant to the concurrent sentencing doctrine.

*See, e.g., United States v. Garcia-Flores*, 136 F. App'x 685, 688 (5th Cir. 2005) (declining to review sufficiency of the evidence challenge to one count, where concurrent sentence was imposed for another valid count of conviction and separate assessments originally imposed for each count had been remitted).

### b) 18 U.S.C. § 1346

Movant also argues that 18 U.S.C. § 1346 is not legally adequate to support his convictions because the jury was instructed on "honest services" fraud and the term "specialized high return investments" was used at Marcusse's sentencing. (Dkt. No. 30, at 173.) Because Movant did not contemporaneously object to either action by the Court, he has procedurally defaulted these arguments and must demonstrate "cause" and "actual prejudice" excusing the default. Movant fails to do so.

Even if the arguments were not defaulted, they would not warrant collateral relief. When the Court used the term "honest services" fraud, it did so in the context of explaining to the jury the difference between tangible and intangible rights. (1:04-CV-165, Dkt. No. 522, Tr. at 3757.) The Court correctly identified "honest services" as a type of intangible right. (*Id.*) However, this Court never instructed the jury that the government's theory of the case against Movant and his co-defendants was that they engaged in a scheme to defraud anyone of "honest services" or any other intangible right. Indeed, the government presented a theory of guilt and proof at trial that the defendants schemed to deprive victims of their money, which is tangible property. (1:04-CV-165, Dkt. No. 521, Tr. at 3503, 3511-17.)

39

Because the jury was not asked by the government to convict the defendants on an intangible rights or "honest services" theory, and this Court did not actually instruct them to review the evidence under such a theory, the Court's explanation could not have rendered the trial fundamentally unfair. *See McGuire*, 502 U.S. at 72. Thus Movant's claim is without merit.

As for the Court's use of the term "specialized high return investments" at Marcusse's sentencing, it had no bearing whatsoever on Movant's sentence, and Movant is not the proper party to object to it. Moreover, it had no affect on Marcusse's sentence. The Court simply and accurately described in lay terms the same scheme that the government described as involving alleged "high return" "investment vehicles" earning "three to ten percent a month" (1:04-CR-165, Dkt. No. 470, Tr. at 42) or "high yield investment program[s]" (1:04-CR-165, Dkt. No. 521, Tr. at 3515) – such as the "eight percent program" (*Id.* at 3513, 3238) – which were allegedly "backed by the federal reserve" and yet "'non-taxed.'" (*Id.* at 3514). Marcusse herself described what she sold as "private placement" "programs" (1:04-CR-165, Dkt. No. 518, Tr. at 3029) that earned as much as "eight" (*Id.* at 3238), "ten or eleven percent" (*Id.* at 3022) and even paid "tax-free gifts" to investors. (1:04-CR-165, Dkt. No. 520, Tr. at 3398). Thus this claim is without merit.

### c) Sentences miscalculated

Next Movant argues that his sentence was miscalculated because investor losses were not directly caused by him. (Dkt. No. 30, at 175.) Ordinarily, claims asserting alleged guideline calculation errors are not cognizable on collateral review. *Grant v. United States*,

72 F.3d 503, 505-06 (6th Cir. 1996). In any case, this claim is without merit; Movant's allegations are conclusions rather than statements of fact and are not supported by the record, his motion, or exhibits. (1:04-CR-165, Dkt. Nos. 470-78, 513-22, 639.).

### d) Losses were miscalculated

Additionally, Movant contends that the total amount of losses and restitution was miscalculated. (Dkt. No. 30, at 177.) Relief under 28 U.S.C. § 2255 is available only for prisoners "claiming the right to be released." 28 U.S.C. § 2255 (2006). A challenge to an order of costs or restitution is not a claim of the right to be released. Thus, challenges to fines, restitution, and other financial penalties are not cognizable under § 2255. *See United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995); *Kaminski v. United States*, 339 F.3d 84, 85 (2d Cir. 2003); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997); *Smullen v. United States*, 94 F.3d 20, 25 (1st Cir. 1996).

The Sixth Circuit has plainly stated: "[a] challenge to a restitution order is not cognizable in a motion to vacate under § 2255." *United States v. Washington*, 172 F.3d 50, 1998 WL 898878, at *2 (6th Cir. 1998). Although the Sixth Circuit permits a defendant to challenge a restitution order on collateral review if it is related to a claim of ineffective assistance of counsel, *Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993), that exception is not available to Movant because he does not frame his restitution claims as premised upon ineffective assistance of counsel.

In any event, Movant's restitution claims lack merit. He claims that Agent Flink

41

"made up the $20.7 million [loss] figure and then refused to produce his 'list'" that itemized specific investors and their losses.  But the record shows that Agent Flink testified in detail as to how he arrived at the $20.7 million figure, explaining that there were "thousands of deposits," all contained in the trial exhibits. (1:04-CR-165, Dkt. No. 513, Tr. at 2038-40.)

**e) Sentence proportionality**

Movant also contends that his sentence was "grossly disparate" on both a local and national basis. (Dkt. No. 30, at 177.)  Outside of extraordinary circumstances, claims of non-constitutional error in sentencing cannot be raised in a § 2255 motion.  *United States v. McArthur*, 2011 WL 2144436, at *1 (E.D. Mich. May 31, 2011).  "'The mere fact that the plaintiff's sentence is greater than that of his co-defendant does not warrant relief under § 2255.'"  *Id.*  (quoting *Kessel v. United States*, 785 F.2d 309, 1986 WL 16448, at * 1 (6th Cir. Jan. 16, 1986)).  "There is no violation of a constitutional right because the United States Constitution contains no strict proportionality guarantee . . . Furthermore, the mere disparity of a sentence even among codefendants does not in and of itself suggest that one defendant has been arbitrarily singled out for a more severe punishment than that normally imposed upon similarly situated defendants.'"  *Id.* (quoting *Terry v. Tripplett*, 62 F.3d 1418, 1995 WL 469424, at *1 (6th Cir. Aug.7, 1990)).

A defendant who complains that his sentence is disproportionately severe compared to sentences received by others is not entitled to collateral relief; "[w]hen the sentence is within the statutory limits, a defendant cannot collaterally attack its severity." *United States*

*v. Burns*, Nos. 86-10, 86-26, 1988 WL 122735, at *6 (E.D. Ky. October 14, 1988) (citing *Orr*

*v. United States*, 408 F.2d 1011 (6th Cir. 1969)).  Moreover, Movant's reliance on *United*

*States v. Wallace*, 597 F.3d 794 (6th Cir. 2010), is misplaced.  (Dkt. No. 21, at 20.)  *Wallace*

held that the district court erred in failing to even consider the defendant's co-defendant

disparity argument.  *Id.* at 802-03.  Here, the Court varied downward substantially from the

advisory guideline range for the very purpose of achieving co-defendant proportionality.

(1:04-CR-165, Dkt. No. 623, at 49.)  Thus this claim is without merit.

### f) Use of 2004 sentencing guidelines

Next Movant argues that the use of the 2004 sentencing guidelines – as opposed to

the 2000 version – violated the Ex Post Facto Clause.  (Dkt. No. 30, at 180.)  Movant alleges

that the prosecutor initially lied about the date of Count 82 being November 2, 2001, in order

to justify using the later version of the sentencing guidelines.[3]  However, the prosecutor

admitted during trial that the date should have been November 2, 2000, for that count (1:04-

CR-165, Dkt. No. 520, Tr. at 3482), and in any case that was not the reason the 2004

sentencing guidelines were used.

The Court used the November 1, 2004, edition of the Guidelines to determine

Movant's advisory guideline range during sentencing, in accordance with U.S.S.G.

§ 1B1.11(a), which directs that the Guideline Manual in effect at the time of sentencing is

---

[3]Movant also points to the fact that the Bosses were sentenced under the 2000 guidelines. However, this argument lacks merit because the Court found that the claims of embezzlement brought against the Bosses in April 2001, terminated their involvement in the conspiracy.

43

to be used, unless there are ex post facto concerns.  In this case, Movant was convicted of

three conspiracy counts: Count 40 (conspiracy to commit mail fraud); Count 41 (conspiracy

to commit money laundering); and Count 42 (conspiracy to defraud the United States).  Each

of these counts charged a continuing offense from January 1998, to October 27, 2004. Under

U.S.S.G. § 1B1.11, comment. n.2, in the case of a continuing offense, the last date of the

continuing offense is controlling for ex post facto purposes.

Here, the last date of Movant's conspiracy convictions was October 27, 2004.  The

crime thus "straddled" the 1998 and 2003 editions of the Sentencing Guidelines.  The Sixth

Circuit has routinely held that, for ex post facto purposes, the most recent version of the

Guidelines applies to straddling crimes.  *See, e.g. United States v. Green*, 242 F. App'x 343,

348 (6th Cir. 2007); *United States v. Barger*, 931 F.2d 359, 365 (6th Cir. 1991); *United

States v. Edgecomb*, 910 F.2d 1309, 1311 (6th Cir. 1990). As the last date of the conspiracy

counts was October 27, 2004, the November 1, 2003, Guidelines Manual might apply if that

manual was more beneficial to Movant.  However, no difference in scoring would have

resulted if the November 1, 2003, Guideline Manual were used.

Consequently, the Court properly used the 2004 Guidelines.  The fact that some of the

substantive mail fraud and money laundering acts occurred on earlier dates is irrelevant

because the government proved that the conspiracies contemplated "continuity of purpose."

*See United States v. Gardiner*, 463 F.3d 445, 463 (6th Cir. 2006).  Therefore, the government

was entitled to a presumption that the conspiracy continued and Movant remained a party

44

unless and until he showed that the conspiracy terminated or he affirmatively withdrew.  *See United States v. Goff*, 400 F. App'x 1, 25 (6th Cir. 2010).  Here, as in *Goff*, Movant made no such showing.

Thus, because the Court must follow the "one book rule," it may not apply separate guideline sections from different editions of the Guidelines manual.  Instead, it must apply the revised version of the Guidelines pertaining to the most recent offense.  *See United States v. Duane*, 533 F.3d 441, 449 (6th Cir. 2008) (citing U.S.S.G. § 1B1.11(b)).  In this case, that was the 2004 version.  Moreover, the substantive counts were grouped with the conspiracy counts.  When offenses are grouped together for sentencing purposes, application of the amended version of the Guidelines to the earlier offenses does not violate the ex post facto clause.  *Id.*  The grouping rules provide sufficient notice to the defendant that revised guidelines may apply to substantially similar prior offenses.  Thus, any disadvantage based upon the newer guidelines results from the defendant's choice to commit further crimes, rather than from changes in law.  *Id.* at 448.

### g) Various other reasons for miscalculation

Movant also disputes the accuracy of facts stated in the Pre-Sentence Report.  (Dkt. No. 30, at 181.)  Under Rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure, "the court . . . must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute, or determine that a ruling is unnecessary either because the matter will not affect the sentencing, or because the court will not consider the matter in

sentencing."  The thrust of Movant's argument is that the facts determined by the jury to be proven beyond a reasonable doubt are actually untrue.  It is the function of the jury to determine "whether the prosecution has proved each element of an offense beyond a reasonable doubt."  *Oregon v. Ice*, 555 U.S. 160, 160 (2009).  Movant's arguments that determinations made by the jury were not actually proven to be true beyond a reasonable doubt will be dismissed for being without merit.  All other issues Movant raises with the Pre-Sentence Report are factual issues he has raised elsewhere in his brief, and these have already been discussed.

### h) Judicial bias

Movant also alleges that judicial bias caused him to receive an unreasonable and unconstitutional sentence. (Dkt. No. 30, at 183.)  This argument has already been addressed in section 2(a).  As before, this argument is not supported by the record, Movant's motion, or the exhibits, and is without merit.

### i) FBI 302s

Last, Movant alleges that the FBI 302s which were withheld prove Agent Flink was lying under oath. (Dkt. No. 30, at 184.)  This claim is not supported by the record, his motion, or the exhibits.   The Government disclosed *Jencks* and *Brady* material, and FBI 302s, before trial began.  Prior to the final pretrial conference, the Government filed a motion agreeing that prior to the trial, "the Government will provide a copy, in advance, of not only '*Jencks*' material but also agency reports of interviews (FBI Form 302's and IRS

Memorandum of Interview 'MOI's') which have not been adopted or reviewed by the witness and are thus not '*Jencks*' materials and not subject to disclosure . . . ." (1:04-CR-165, Dkt. No. 275, at 1.)  Citing a concern that "further copying or dissemination of these materials could endanger or harass Government witnesses, chill future sources of information, and constitute unwarranted disclosure of grand jury and Government information," the Government requested that the Court order that the early release of the materials be subject to the restriction that copies distributed to pro se defendants be made in open court and remain at all times in the courtroom.  (*Id.* at 2.)  The Court granted this request, but further required that standby counsel be given access to the materials as well. (1:04-CR-165, Dkt. No. 288.)

Moreover, Movant has no viable *Brady* claim based on any of the allegedly withheld documents.  To establish a *Brady* violation, a defendant has the burden of showing that the Government suppressed evidence, that such evidence was favorable to the defense, and that the suppressed evidence was material.  *United States v. Warshak*, 631 F.3d 266, 300 (6th Cir. 2010).  "[C]onclusory" or "purely speculative" allegations, however, cannot support a *Brady* claim.  *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000).  Movant contends that Agent Flink lied when he claimed that he did not know MLC was an investment.  Agent Flink, however, testified that money was paid to MLC, but that it was a different program, with different investors and he did not investigate it. (1:04-CR-165, Dkt. No. 513, Tr. at 2057.) The fact that people mentioned MLC in some of the FBI reports has no relevance to Flink's

47

testimony or the substantial proof underlying Movant's convictions.

## IV.

Movant's claims were not raised on appeal and are thus procedurally defaulted, with the exception of his ineffective assistance of counsel claim and *Santos* claim.  Regardless, all of Movant's claims are without merit except for one.  The one claim which does have merit – the *Santos* claim – only entitles Movant to collateral relief on counts 43-57.  However, the Court has discretion to decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction.  Because that is the case here, the Court declines to grant Movant § 2255 relief.

An order will be entered consistent with this opinion.


Dated: September 25, 2012                    /s/ Robert Holmes Bell
                                             ROBERT HOLMES BELL
                                             UNITED STATES DISTRICT JUDGE